Leroy ETHRIDGE, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–89–00493–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 9, 1990.

Frances Northcutt, Houston, for appellant.

Timothy G. Taft, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## OPINION

JUNELL, Justice.

A jury convicted appellant of possession of a controlled substance, namely cocaine, and the court assessed punishment, enhanced by two prior felony convictions, at imprisonment for thirty-five years. Appellant brings two points of error alleging: (1) failure to afford appellant a speedy trial as guaranteed by the Sixth Amendment to the U.S. CONST., TEX. CONST. art. I, § 10, and TEX.CODE CRIM. PROC. ANN. art. 1.05; and, (2) insufficient evidence to show appellant knew the substance he possessed was cocaine. We affirm.

The offense occurred in the Fifth Ward of Houston on a Thursday afternoon in June, 1987. Tactical response officers with the Houston Police Department assisted federal narcotics agencies in gathering data on a motel reported to be a hotbed of prostitution and drug traffic. The officers wore raid jackets as they explored the premises, counted rooms and made a diagram in preparation for a forthcoming raid. One officer observed appellant leaning out a rear window and preparing to drop a plastic packet. Appellant put the plastic packet in his mouth when he saw the officer about ten feet away. Testimony of the officer at trial was as follows:

A: I seen his hands sticking out of the window. It was past the burglar bars. And I observed a packet—a clear plastic packet, with white powder in it.

Q: In your experience as a Houston Police officer—and specifically working with narcotics for the last four years—what did that look like to you?

A: It looked like cocaine.

* * * * * *

Q: Once you saw the arm of the person sticking out of the window with the clear plastic baggie with powder in it, what did you do?

A: I walked over to the window; you know, when he seen me and he looked surprised, I thought he was going to throw it down. But when, when he seen me, he just took his hand back into the window and placed the packet into his mouth.

Q: And could you see this at the time.

A: Yes, I could.

Q: So what did you do?

A: I ordered him to hand me the packet.

Q: Did he?

A: He thought about it for a couple of seconds. And then he took it out of his mouth and handed it to me.

The officer then asked appellant to step out of the motel room.

Q: What did you do then when he stepped out of the room?

A: I talked to him. He stated that it was not cocaine; it was, in fact, bunk, which is a street term for fake cocaine.

The officer did not have necessary apparatus to make a field test of the substance so he took it to police department chemists for processing. It was found to be one gram of cocaine (with a street value of approximately $100).

The officer did not see anyone else in the motel room with appellant. The officer said he never drew his weapon during his encounter with appellant. The officer said appellant was known to be a confidential informant used by most other members of the tactical response squad. This officer had never used appellant as an informant, however.

An arrest warrant was issued over one month after the date of the offense. An indictment followed within a few weeks of the issuance of the arrest warrant but the actual arrest took place in October 12, 1988, more than 16 months after the offense. Trial occurred in May of 1989.

In point of error number one appellant alleges trial court error in overruling appellant's motion to dismiss for failure to afford him a speedy trial. (The motion was denied after a hearing on the day before the jury trial began.) The State concedes that a period of twenty-two months between the filing of charges against appellant and his actual trial is sufficient to trigger examination of the other factors set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):

a. the reason for the delay
b. defendant's assertion of his rights
c. prejudice to the defendant resulting from the delay.

Appellant cites *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) to show the purposes underlying the right to speedy trial and offers the most important (according to *Barker v. Wingo*): to be sure the defendant is adequately able to prepare his case before witnesses die or disappear.

■ Appellant urges us to find that reasons for the delay in bringing him to trial do not appear in the record of the hearing on the motion to dismiss. Appellant further asserted in oral argument that when we consider the propriety of the trial court's denial of the motion to dismiss we must look solely at the evidence which was before the trial court at the time the motion was denied. The State, on the other hand, argues that this court may consider all of the evidence adduced at trial in determining whether the court below erred in overruling the pre-trial motion to dismiss for lack of speedy trial.[1] We review this case without settling the controversy between appellant and the State. However, there was sufficient evidence at the pre-trial hearing to sustain the trial court's holding.

Although the State put on no evidence at the hearing on the motion to dismiss, the State performed extensive cross-examination on the three witnesses brought by the defense.[2]

The only evidence in the record relevant to police efforts to serve the arrest warrant on appellant appears on one of the defendant's exhibits offered at the pre-trial hearing, the "Capias and Warrant Service Status" form used by the Harris County Sheriff's Department for this case. This form shows that one, and possibly two, attempts were made to serve the arrest warrant in 1987 at the address given by appellant at the motel scene of the offense. The form shows a notation "Vacant house, no power." Appellant testified that he had lived for years at the address he gave police, but that he moved out in January 1988, and rented the premises to others. Even then, appellant said, he still received his mail at the address given, that he never left Harris County, and that after moving he always lived within four blocks of the motel (which also was located within four blocks of the home address given).

**1.** Authority brought by both sides includes, *United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1987); *Hardesty v. State,* 667 S.W.2d 130, 133 n. 6 (Tex.Crim.App. 1984); *Wilkerson v. State,* 657 S.W.2d 784 (Tex. Crim.App.1984); *Miller v. State,* 736 S.W.2d 643 (Tex.Crim.App.1987); *Turner v. State,* 685 S.W.2d 38 (Tex.Crim.App.1985); *Jeffers v. State,* 646 S.W.2d 185 (Tex.Crim.App.1981); *Adams v.* *State,* 707 S.W.2d 900, 903 (Tex.Crim.App.1986); *Szilvasy v. State,* 678 S.W.2d 77 (Tex.Crim.App. 1984); *McDole v. State,* 579 S.W.2d 7, 8 (Tex. Crim.App.1979); and *Hicks v. State,* 545 S.W.2d 805, 808 (Tex.Crim.App.1977).

**2.** Appellant brought himself, the clerk of the district court, and a private investigator.

Appellant testified *at the pre-trial hearing* that he was on parole when the offense occurred and that he knew there was a warrant out for him for violation of that parole. He also admitted that he called police in October 1988 complaining of an assault, and that he identified himself as "John Williams" on that occasion to conceal his true identity and avoid arrest for his parole violation.

Also at the hearing on pretrial motions appellant said that another person, Walter Davis Jones, was a few feet away from him in the same motel room when the officer approached outside the back window. On cross-examination, appellant was asked, "You don't know what he [Jones] would testify to; do you?". His answer was, "Not really, but just-" Appellant testified that Jones did not know what (property) appellant had in his possession. The following testimony then ensued:

Q: If Mr. Jones was in the room behind you and you were looking out the window, he couldn't see what you could; could he?

A: No.

Q: So, therefore, Mr. Jones can't testify about anything regarding this case; can he?

A: I don't know.

Appellant testified that he learned from a Crimestopper report in the news media that Jones died in September, 1988.

On cross-examination at the pre-trial hearing, the clerk for the district clerk's office testified that the file on this case contained no motion or request for a speedy trial. Also absent from the file were any requests for subpoenas of witnesses.

A private investigator working on behalf of appellant said he could not reach any witnesses to whom he was directed by appellant and that no subpoenas were issued for any witnesses, even though names, some addresses and/or telephone numbers were known.

There was enough evidence at the pre-trial hearing to justify the trial court's denial of the motion to dismiss the case for lack of a speedy trial. The record shows a reasonable effort to deliver the warrant at the last known address of appellant two days after it was signed by the magistrate. Appellant's acknowledged address was a vacant house. Appellant testified he was making himself scarce because of another warrant for parole violation and that he used an alias to avoid apprehension by police. Appellant failed to assert his rights to a speedy trial by making any request for a speedy trial. No witnesses were subpoenaed by appellant. While some witnesses may have been produced, had there been an earlier arrest of appellant, there is nothing to indicate what testimony any such witnesses may have given to assist appellant in his defense of the charged offense or how appellant was prejudiced by the lack of such witnesses. The only witness who could have been of any possible assistance was Walter Davis Jones, who may have been in the motel room with appellant when the offense was committed. Appellant did not know what Jones would say in his testimony or even if he could testify at all about anything having to do with the offense. Appellant's point of error number one is overruled.

■ In a second point of error appellant asserts insufficient evidence to support his conviction because there is no proof beyond a reasonable doubt that he knew the substance he possessed was cocaine.

In reviewing the sufficiency of the evidence to support a conviction we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560; *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989) (reconfirming the *Jackson* standard of review) This standard is applied to both direct and circumstantial evidence cases. *Chambers v. State,* 711 S.W.2d 240, 245 (Tex.Crim. App.1986). It is not required that every fact point directly and independently to the guilt of the accused. The cumulative force of all the incriminating circumstances may

be sufficient to support a guilty verdict. *Harris v. State*, 738 S.W.2d 207, 220 (Tex. Crim.App.1986) (op. on reh'g), *cert. denied*, 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 159 (1987); *see Ruben v. State*, 645 S.W.2d 794, 796 (Tex.Crim.App.1983); *Gonzales v. State*, 681 S.W.2d 270, 273 (Tex.App.—San Antonio 1984, no pet.).

Appellant told the police officer the substance in the plastic package was "bunk" or fake cocaine. To establish unlawful possession of narcotics, it must be proven that (1) appellant exercised care, control, and management over the contraband, and (2) that he knew the substance was contraband. *Rhyne v. State*, 620 S.W.2d 599 (Tex.Crim.App.1981).

It is undisputed that appellant had cocaine. It is a reasonable inference that appellant knew he had the cocaine and was trying to dispose of it when police encountered him. This inference is more than a strong suspicion or mere probability. It is not an offense to possess fake cocaine, only to try to pass it as the real thing. It is not a reasonable hypothesis that appellant thought he was holding "bunk", tried to throw it out the window, and concealed it in his mouth when he saw police officers approaching within a few feet of the window. A rational factfinder could easily have found these possibilities not to be reasonable. *See Williams v. State*, 784 S.W.2d 428 (Tex.Crim.App.1990). The gestures of trying to dispose of the contraband or trying to conceal it from the view of the police provide sufficient evidence to satisfy the element of guilty knowledge. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.

