ACCEPTED
13-15-00110-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/17/2015 11:20:58 AM
CECILE FOY GSANGER
CLERK

## NO. 13-15-00110-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF
TEXAS
AT CORPUS CHRISTI

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/17/2015 11:20:58 AM
CECILE FOY GSANGER
Clerk

**JAMES CORTNEY DEAN,**
**Appellant,**

**v.**

**THE STATE OF TEXAS,**
**Appellee.**

On Appeal from the
24th Judicial District Court
Of Victoria County, Texas
Cause No. 14-03-27814-A

### BRIEF FOR THE STATE OF TEXAS

**STEPHEN B. TYLER**
Criminal District Attorney
Victoria County, Texas

**BRENDAN WYATT GUY**
Assistant Criminal District Attorney
Victoria County, Texas
205 N. Bridge St. Ste. 301,
Victoria, Texas 77901-6576
bguy@vctx.org
(361) 575-0468
(361) 570-1041 (fax)
State Bar No. 24034895

Attorneys for the State of Texas

**ORAL ARGUMENT NOT REQUESTED**

# TABLE OF CONTENTS

**PAGE (S)**

TABLE OF CONTENTS ............................................................................ i

INDEX OF AUTHORITIES................................................................. ii-iii

STATEMENT OF THE FACTS ......................................................... 1-11

SUMMARY OF ARGUMENT........................................................... 12-13

ARGUMENT...................................................................................... 13-35

   I.  **The trial court did not abuse its discretion in allowing the admission of evidence that Appellant had swallowed narcotics right before being confronted by the police**.......... 13-33

  II.  **In the alternative, any error from the admission of the evidence of Appellant swallowing narcotics immediately prior to being contacted by the police was harmless**............ 33-35

PRAYER ............................................................................................ 36

SIGNATURE...................................................................................... 36

CERTIFICATE OF COMPLIANCE ................................................. 37

CERTIFICATE OF SERVICE .......................................................... 38

# INDEX OF AUTHORITIES

## Texas Cases

*Casey v. State,* **215 S.W. 3d 870 (Tex. Crim. App. 2007)** ............... 25, 33

*Cude v. State,* **716 S.W. 2d 46 (Tex. Crim. App. 1986)** .................. 15, 26

*Davis v. State,* **979 S.W. 2d 863**
**(Tex. App.-Beaumont 1998, no pet)** ....................................................... 23

*Ethridge v. State,* **795 S.W. 2d 281**
**(Tex. App.-Houston [14th Dist.] 1990),**
*pet. dism'd,* **812 S.W. 2d 600 (Tex. Crim. App. 1990) (en banc)** ......... 19

*Evans v. State,* **202 S.W. 3d 158 (Tex. Crim. App. 2006)** ..................... 15

*Feldman v. State,* **71 S.W. 3d 738 (Tex. Crim. App. 2002)** .................. 25

*Gigliobanco v. State,* **210 S.W. 3d 637 (Tex. Crim. App. 2006)** ...... 25-26

*Gonzalez v. State,* **2014 WL 4049800, 13-13-00427-CR**
**(Tex. App.-Corpus Christi 2014, pet. ref'd)** .......................................... 34

*Hooper v. State,* **214 S.W. 3d 9 (Tex. Crim. App. 2007)** ....................... 18

*Johnson v. State,* **68 S.W. 3d 644 (Tex. Crim. App. 2002)** ................... 29

*Ketchum v. State,* **199 S.W. 3d 581**
**(Tex. App.-Corpus Christi 2006, pet. ref'd)** .......................................... 33

*Hyde v. State,* **846 S.W. 2d 503 (Tex. Crim. App. 1993)** ...................... 19

*Marles v. State,* **919 S.W. 2d 669**
**(Tex. App.-San Antonio 1996, pet. ref'd)** ............................................. 23

*Montgomery v. State,* **810 S.W. 2d 372 (Tex. Crim. App. 1990)** .... 14, 23

*Morales v. State,* **32 S.W. 3d 862 (Tex. Crim. App. 2000)** .................... 14

*Mozon v. State,* 991 S.W. 2d  841 (Tex. Crim. App. 2004)................... 25

*Rogers v. State,* 853 S.W. 2d 29 (Tex. Crim. App. 1993)................ 14, 18

*Rogers v. State,* 2006 WL 240229, 2-04-529-CR
(Tex. App.-Ft. Worth, no pet)
(mem. op. not designated for publication)............................................. 32

*Sanchez v. State,* 2015 WL 2353382, 13-12-00603-CR
(Tex. App.-Corpus Christi 2015, pet. filed)
(mem. op. not designed for publication) .............................................. 19

*Smith v. State,* 211 S.W. 3d 476
(Tex. App.-Amarillo 2006, no pet)......................................................... 23

*State v. Mechler,* 153 S.W. 3d 435 (Tex. Crim. App. 2005) ................. 31

*Yohey v. State,* 801 S.W. 2d 232
(Tex. App.-San Antonio 1990, pet. ref'd) ............................................. 23

## Texas Rules

TEX. R. APP. P. 9.4 ................................................................................ 37

TEX. R. APP. P. 44.2 .............................................................................. 33

TEX. R. EVID. 403 ............................................................................ 25, 32

IN THE COURT OF APPEALS
FOR THE THIRTEEN DISTRICT OF TEXAS
AT CORPUS CHRISTI

JAMES CORTNEY DEAN……..……………..………………..Appelant

v.

THE STATE OF TEXAS,…..………………………………...Appellee

\* \* \* \* \*

**STATE'S BRIEF ON THE MERITS**

\* \* \* \* \*

TO THE HONORABLE COURT OF APPEALS:

COMES NOW, THE STATE OF TEXAS**,** by and through her Criminal District Attorney, Stephen B. Tyler, and as Appellee in the above numbered and entitled cause, and files this the Appellee's brief showing:

**STATEMENT OF THE FACTS**

Appellant was indicted on March 7, 2014 for one count of Manufacture or Delivery of Substance in Penalty Group 1 in an amount of four grams or more but less than 200 grams. [CR-I-5]. The offense was enhanced to habitual offender status due to the Appellant having two prior non-State jail felony convictions. [CR-I-5]. Appellant's case was called to trial on March 2, 2015. [RR-II-1].

In Appellant's opening argument his defense counsel mentioned that Appellant's passenger on the night of his arrest, Brittany Williams, had also been charged with possession of the cocaine. [RR-II-148]. Appellant's counsel then suggested that Ms. Williams had a deal for testifying for the State in this case and mentioned that she was on parole for delivery of cocaine. [RR-II-148]. Appellant's counsel then asked the jury after they viewed the video of the arrests in this case to consider the difference in Appellant's reaction to being arrested compared to Ms. Williams, and asserted that it was Ms. Williams who was acting in a guilty manner. [RR-II-148-149]. Appellant's counsel then argued that it was Ms. Williams who was in possession of the cocaine at issue in this case and argued that she was the person who asked the Appellant to consume a portion of the cocaine. [RR-II-149]. Appellant's counsel then conceded that Appellant did in fact consume some of the cocaine. [RR-II-149]. Appellant's counsel then criticized how the police had investigated the scene and argued that if the police had properly finger printed the evidence they would have found Ms. Williams' finger prints on the contraband. [RR-II-149]. Appellant's counsel then promised that the evidence would show that Ms. William was in fact closer to the drugs than Appellant was. [RR-II-150].

The State's first witness was Deputy Stephen Lang of the Jackson County Sheriff's Department, who had been an officer of the Victoria Police Department at the time of this case. [RR-II-151-152]. Deputy Lang then testified to initiating a traffic stop on Appellant's vehicle on January 18, 2014 and having Appellant not immediately pull over but rather continue driving for another three or four blocks. [RR-II-153-155]. Deputy Lang went on to describe searching Appellant's vehicle and finding a green baggie within the DVD-radio player in Appellant's vehicle. [RR-II-161]. Deputy Lang further established that upon further inspection he believed the green baggie contained a quantity of crack cocaine. [RR-II-166]. Deputy Lang then described removing the face plate of the DVD player and finding several additional baggies that he also determined contained crack cocaine. [RR-II-166-167]. Deputy Lang also described locating a black digital scale. [RR-II-167-168]. Deputy Lang then described questioning both the Appellant and Ms. Williams and stated that both denied knowledge of the cocaine. [RR-II-175]. Deputy Lang then described the search of Appellant at the Victoria County jail, where an empty, tiny Ziploc baggie with a Batman emblem upon it was found on the Appellant as well as $404 in United States currency and explained how these items were consistent with drug trafficking. [RR-II-178-179]. Deputy Lang then testified that the

digital scale was located in a central console within the vehicle and that said console was closed when he first entered the vehicle. [RR-III-6-7].

On cross-examination, Appellant questioned Deputy Lang about the possibility of having drug detection dogs sniff the money that was seized from Appellant. [RR-III-16-20]. Appellant then questioned Deputy Lang about the initial traffic stop and got Deputy Lang to establish that Appellant pulled his vehicle over under a light. [RR-III-26-27]. Appellant also had Deputy Lang testify that it would be reasonable for a person who was pulled over by the police to pull over under a street light. [RR-III-26-27]. Appellant then questioned Deputy Lang regarding the console where the digital scale was located and had Deputy Lang testify that the console was within equal reach of Ms. Williams as it was of the Appellant. [RR-III-33-34]. Appellant then had Deputy Lang testify that the green baggie containing crack cocaine was located on the passenger's side of the DVD player. [RR-III-39]. Appellant also asked Deputy Lang who had greater access to the baggie between the Appellant and Ms. Williams to which Deputy Lang indicated both parties had equal access. [RR-III-39]. Appellant then questioned Deputy Lang on if the green baggie was visible from the driver's side of the vehicle. [RR-III-39-40]. Appellant then questioned Deputy Lang about whether it was the Appellant or Ms. Williams

who reacted worse to being arrested, and Deputy Lang indicated it was Ms. Williams. [RR-III-41]. Appellant then questioned Deputy Lang about his knowledge that Ms. Williams was on parole. [RR-III-41-42]. Appellant then again questioned Deputy Lang about if Ms. Williams was within arm's reach of the cocaine, to which Deputy Lang agreed that she was. [RR-III-44-46]. Appellant then questioned Deputy Lang about his handling of the seized contraband and digital scale and questioned whether Deputy Lang's picking up those items could have destroyed the fingerprints of whoever possessed those items, to which Deputy Lang conceded that it was possible. [RR-III-46-49]. Appellant also had Deputy Lang establish that nothing was found inside of the "Batman baggie". [RR-III-50].

On re-cross, Appellant asked Deputy Lang how long it would have taken for Ms. Williams to lift up the cover to the DVD player and insert the green baggie inside, to which Deputy Lang established it "wouldn't take a long time at all" and agreed it could be done in a couple of seconds. [RR-III-60]. Appellant also again had Deputy Lang testify that the green baggie was located at a point that was closer to Ms. Williams than to the Appellant. [RR-III-61].

The State next called Ms. Gennie Moya. [RR-III-64]. Ms. Moya established she was a friend of Brittany Williams. [RR-III-64]. Ms. Moya

then testified to getting a ride with the Appellant on January 18, 2014 and to seeing the Appellant "mess with his radio a little bit." [RR-III-65, 67]. Ms. Moya subsequently described seeing Appellant fighting with his radio and stated she also thought she saw a "little bit of plastic" inside the radio. [RR-III-68]. Ms. Moya then confirmed she observed Appellant struggling with the radio twice during that drive. [RR-III-69]. Ms. Moya then admitted she had a prior theft by check conviction. [RR-III-70].

On cross-examination, Ms. Moya characterized herself as one of Brittany Williams' best friends. [RR-III-72]. Appellant then questioned Ms. Moya about Ms. Williams being on parole. [RR-III-73].

The State then called Ms. Brittany Williams. [RR-III-86]. Ms. Williams testified to seeing Appellant pull something from his sock and ingest it. [RR-III-90]. Ms. Williams was not able to identify what that object was. [RR-III-90]. Ms. Williams also acknowledged she did not tell the police at the arrest scene about seeing Appellant swallow something. [RR-III-94]. Ms. Williams then testified that she was on parole for Manufacuture or Delivery and also had a prior felony conviction for Failure to Appear. [RR-III-95]. Ms. Williams then explained that she only told the police about Appellant swallowing the unknown substance after the police told her the Appellant was being taken to the hospital. [RR-III-96]. Ms.

Williams then denied possessing cocaine on January 18, 2014, denied being aware that there was cocaine in the vehicle in which herself and the Appellant was driving on that date, and denied telling Appellant to swallow some of the drugs. [RR-III-98-99].

Appellant's cross-examination of Ms. William began with questioning her about her prior felony drug conviction. [RR-III-99-101]. Appellant then questioned her about the circumstances of her prior Fail to Appear conviction. [RR-III-101-102]. Appellant than had Ms. Williams acknowledge that from where she was sitting in Appellant's vehicle she was within easy reach of the narcotics. [RR-III-107]. Appellant then questioned Ms. Williams at length about the circumstances of the charge against her from this incident being dismissed and about the possibility the State could refile the charges against her. [RR-III-107-109]. Appellant then questioned Ms. Williams about her not telling the investigating officers who interviewed her in February of 2014 about Appellant swallowing an unknown item. [RR-III-110-111]. Appellant then asked Ms. Williams how long it would take her to have hidden drugs behind the DVD slot to which Ms. Williams stated she did not know because she had not done such a thing. [RR-III-111]. Appellant then asked Ms. Williams if she was the one who told Appellant not to pull over during the initial traffic stop; an

accusation that Ms. Williams denied. [RR-III-111-112]. Appellant then accused Ms. Williams of having not seen Appellant swallow anything; an accusation that Ms. Williams also denied. [RR-III-112].

The State next called Sergeant Joseph Randolph of the Victoria County Sheriff's Office. [RR-III-116]. Sergeant Randolph described how on the morning of January 19, 2014, there was an incident in the Victoria County jail where the Appellant was found lying on the floor of a holding cell, shaking. [RR-III-119]. Sergeant Randolph further established this occurred after the Appellant had been in a holding cell for over nine hours. [RR-III-121]. Sergeant Randolph then testified that when deputies approach the Appellant, Appellant was unresponsive and was bleeding "pretty bad" from the back of his head. [RR-III-122-123]. Sergeant Randolph further established that Appellant was suffering a seizure and that his condition was serious enough that Appellant was taken to the hospital. [RR-III-124-125]. Sergeant Randolph then described interviewing Brittany Williams for medical purposes as he believed she might have relevant information about Appellant's condition. [RR-III-127]. Sergeant Randolph then described what was told to Ms. Williams about Appellant's condition and the information she provided about having seen Appellant swallow an unknown object. [RR-III-127-128].

On cross-examination Appellant asked Sergeant Randolph if Ms. Williams had told him that she had given the drugs to Appellant to swallow. [RR-III-129]. Sergeant Randolph stated she did not make such an admission. [RR-III-129].

The State later called Dr. Daniel Cano. [RR-III-151]. Dr. Cano testified that he treated the Appellant in January of 2014. [RR-III-154]. Dr. Cano sponsored the admission of medical records from Appellant's treatment at that time. [RR-III-160; State's Exhibits 20-21]. Dr. Cano then established that Appellant's principle diagnosis was poisoning by cocaine, and that he agreed with that diagnosis. [RR-III-165; State's Exhibit 20]. Dr. Cano then helped show how State's Exhibit 21 established that Appellant had ingested an unknown amount of cocaine, benzodiazepine, and PCP. [RR-III-167; State's Exhibit 21]. Dr. Cano then established that a person could have a seizure ten hours after swallowing cocaine if there was a delayed release into the bloodstream, and that wrapping cocaine in a plastic baggie could cause such a delayed release. [RR-III-171-172].

On cross-examination, Dr. Cano established the hospital had detected the presence of cocaine, PCP, and benzodiazepine through a urine test. [RR-III-174].

After the completion of the State's case, Appellant recalled Brittany Williams to the stand. [RR-IV-61]. Appellant then questioned Ms. Williams about whether she had told Sergeant Randolph that Appellant had removed the unknown substance that he then swallowed from his sock, to which Ms. Williams acknowledged she had not so told Sergeant Randolph. [RR-IV-70]. Appellant then once again reiterated that Ms. Williams was a convicted felon. [RR-IV-71-72]. Appellant also asked Ms. Williams if she would lie in order to avoid having criminal charges from this incident re-filed upon her, to which Ms. Williams insisted she would not lie. [RR-IV-72].

Appellant's closing argument suggested that Appellant had continued driving after being signaled to stop by the police simply because Appellant wanted to stop under a light. [RR-IV-100-101]. Appellant's counsel then again reiterated Ms. Williams' criminal record and insisted she had lied during the trial. [RR-IV-101-102]. Appellant's counsel then argued that Ms. Mayo also had a motive to lie given her friendship with Ms. Williams. [RR-IV-103]. Appellant's counsel then at length attacked Ms. Williams' credibility by stressing her prior criminal record, alleged inconsistencies in her testimony and argued that Ms. Williams had given the Appellant the drugs to swallow, that Ms. Williams had a motive to lie to avoid being

prosecuted in this matter herself, and that the drugs at question in this case belonged to Ms. Williams. [RR-IV-104-109]. Appellant's counsel also stressed that the drugs were more visible from Ms. Williams' vantage point in the vehicle then they were from Appellant's. [RR-IV-110]. Appellant's counsel then criticized the police investigation for not taking photographs of where the digital scale was located, for potentially contaminating any finger prints on the seized items, and for not having drug detecting dogs perform a sniff on the seized money. [RR-IV-110-112]. Appellant's counsel then again attacked Ms. William's credibility, reminding the jury that she was "a convicted drug dealer" and insisting that she was only testifying to protect herself and that the drugs actually belonged to Ms. Williams. [RR-IV-114-116]. Appellant's counsel then insisted that the case really comes down to whether "you believe Brittany Williams or you don't believe Brittany Williams." [RR-IV-117].

The jury found Appellant guilty of the offense alleged in the indictment. [RR-IV-130]. After the sentencing hearing, the jury assessed a punishment of 35 years imprisonment and a $5,000 fine. [RR-IV-166].

## SUMMARY OF THE ARGUMENT

The trial court did not abuse its discretion in permitting the evidence that Appellant had swallowed narcotics prior to being contacted by the police to be admitted into evidence as that evidence was relevant and was not unfairly prejudicial.

The evidence was relevant because it helped the State establish two facts of consequence for the case. First it provided proof of the affirmative link between the Appellant and the narcotics located in his vehicle which the State had to establish in order to prove the possession element of the charged offense. Second the evidence helped the State "shore up" the testimony of one of its key witnesses, Brittany Williams, whose credibility was critical in this case and was under heavy attack by the defense throughout the trial. Therefore since the evidence helped prove facts of consequence, the evidence was relevant.

Nor was the evidence unfairly prejudicial. The evidence had immense probative value as the State had a clear need for the challenged evidence. It was the only evidence the State had linking the Appellant to the drugs located in his vehicle that could not be plausibly attacked or explained away by the defense. Furthermore, it was the only evidence the State had at all that could shore up Ms. William's testimony after the defense attacked her

credibility and suggested she was actually the person in possession of the narcotics. Nor did the evidence risk having the jury decide the case on an improper basis. It was not unduly inflammatory evidence, and the evidence was directly relevant to the charged offense. Furthermore, even if there was some risk of unfair prejudice from this evidence, that risk did not substantially outweigh the probative value of the evidence. Therefore the evidence was not unfairly prejudicial and as such since it was relevant and was not unfairly prejudicial it was properly accepted into evidence.

In the alternative any error from the admission of this evidence was harmless because it would only have been error to admit the evidence if the State's other evidence was so overwhelming the State did not need this evidence, and if the remainder of the State's case was that overwhelming then the admission of this evidence could not have had any impact on the verdict. This is because if the remainder of the State's case had overwhelming evidence of Appellant's guilt then he would have been found guilty whether the challenged evidence was admitted or not.

## **ARGUMENT**

## I. **The trial court did not abuse its discretion in allowing the admission of evidence that Appellant had swallowed narcotics right before being confronted by the police.**

The trial court acted well within its discretion in determining that the

evidence concerning Appellant having swallowed cocaine and other narcotics prior to being contacted by the police was neither irrelevant nor unfairly prejudicial.

The test for relevance is whether a reasonable person would believe the particular piece of evidence is helpful in determining the truth or falsity of any fact that is of consequence to the case. See *Montgomery v. State,* 810 S.W. 2d 372, 376 (Tex. Crim. App. 1990). Nor does evidence have to be dispositive of an issue to be relevant. Evidence merely tending to affect the probability of the truth or falsity of a fact in issue is still relevant. *Montgomery,* 810 S.W. 2d at 376. All the evidence has to do is provide a "small nudge" towards proving or disproving some fact of consequence. *Id.* This broad definition of relevance allows a liberal policy of admission of evidence for the jury's consideration. *Morales v. State,* 32 S.W.3d 862, 865 (Tex. Crim. App. 2000). Furthermore, understanding that reasonable people may disagree on "whether a particular inference is available", appellate courts are not to disturb a trial court's determination of relevance so long as the trial court's ruling was "within the zone of reasonable disagreement." *Rogers v. State,* 853 S.W. 2d 29, 33 (Tex. Crim. App. 1993).

In the present case there was no serious dispute that the seized contraband was cocaine. There was no serious dispute that the cocaine was

lawfully obtained pursuant to a valid stop and search. And there was no serious dispute concerning the identity of the Appellant. Therefore the critical issue in this case was whether or not Appellant was in possession of the narcotics found within his vehicle.

The State could not prove Appellant was the person in possession of the contraband solely by showing the drugs were located in his vehicle or by showing that Appellant was found in close proximity to those drugs. It is well settled Texas law that when a defendant is not in exclusive possession of the place where contraband is located, the defendant's presence at the location is by itself insufficient as a matter of law to establish the defendant had knowledge or control over the contraband. See *Cude v. State,* 716 S.W. 2d 46, 47 (Tex. Crim. App. 1986). Rather in such circumstances the State must present some evidence, either direct or circumstantial, beyond mere proximity to the drugs to establish an affirmative link between the accused and the contraband in order to prove possession beyond a reasonable doubt. See *Evans v. State,* 202 S.W. 3d 158, 161-162 (Tex. Crim. App. 2006).

Here, Appellant did not have exclusive possession of the place where the contraband was located. He was not alone in his vehicle at the time the drugs were found there but rather had a passenger, Brittany Williams, who was located just as close if not closer to the contraband narcotics as he was.

[RR-III-39, 61]. Furthermore, it was certainly plausible to believe that Ms. Williams could be in possession of the narcotics as she was on parole for a prior felony conviction for drug trafficking at the time of this offense. [RR-III-95]. And Appellant largely centered his entire defense strategy on that exact ground: disputing possession of the narcotics by repeatedly insisting or implying throughout his opening argument, through the cross-examination of the State's witnesses, and in his closing argument that the seized drugs actually belonged to Ms. Williams. [RR-II-149, III-33-34, 39, 41, 44-46, 60-61, 107, 111-112, 129, IV-109-110, 116].

Therefore the State needed evidence to establish an affirmative link between Appellant and the illegal narcotics. Evidence that, mere seconds before he was to be questioned by the police, Appellant swallowed narcotics (including the very substance, cocaine, that was found hidden in great quantities in Appelant's vehicle) was strong evidence to establish that required affirmative link.

There was specific evidence to suggest that the drugs Appellant swallowed were part of the same consignment of drugs as the other drugs located in Appellant's vehicle. Sergeant Randolph's testimony established that Appellant suffered a seizure after over nine hours in police custody. [RR-III-114, 121]. Dr. Cano likewise explained that a seizure could still

occur ten hours after swallowing cocaine if there was a delayed release of cocaine into the bloodstream. [RR-III-171]. Dr. Cano then further established that wrapping cocaine in plastic would help delay its release into the bloodstream. [RR-III-172]. From this, it would be logical to infer that the cocaine Appellant swallowed must have been wrapped in plastic, and that in turn makes it very likely the drugs Appellant swallowed were part of the same consignment of drugs as the drugs that were found in Appellant's vehicle. It is likewise a logical inference that the same type of drugs (cocaine), that were both present in the same automobile at the same time, were both within arms distance of the same defendant, were both hidden from view, and were both wrapped in plastic, must have been part of the same consignment of drugs. [RR-III-161, 166-167]. And if Appellant had control over part of the consignment (which he obviously did since he was able to swallow that portion of the consignment) then it is likewise reasonable to conclude that he must have had control over the rest of the consignment as well.

The evidence suggesting that both the drugs Appellant swallowed and the drugs that were located in the DVD slot of Appellant's vehicle were part of the same consignment of drugs is circumstantial. However, fact-finders are permitted to make reasonable inferences from circumstantial evidence

and to "draw reasonable inferences from basic facts to ultimate facts." See *Hooper v. State,* 214 S.W. 3d 9, 13-14 (Tex. Crim. App. 2007). Moreover, the fact finder is also permitted to draw multiple reasonable inferences from the evidence, so long as each inference is supported by the evidence at the trial. *Id.* at 15-16. Each inference that is necessary to come to the conclusion that Appellant had knowledge and control of the narcotics found in the DVD slot of his vehicle based upon him having swallowed narcotics right before being stopped by the police, is a reasonable inference that is supported by the evidence. Therefore the evidence that Appellant swallowed some of the cocaine was directly relevant for establishing one of the elements of the charged offense: that he had knowing possession over the rest of the cocaine that was found in his vehicle.

The evidence that Appellant swallowed some benzodiazepines and PCP was similarly relevant. The Court of Criminal Appeals has already accepted that evidence that a defendant uses and sells one type of drug can be relevant to establish he possesses another illegal drug. See *Rogers,* 853 S.W. 2d at 32. If evidence of possessing one drug can be relevant to prove possession of another drug than logically evidence that a defendant swallowed drugs immediately prior to being contacted by the police should also be held as relevant to show that the defendant has control over the

nearby hidden drugs even if some of the drugs Appellant swallowed are a different substance than the hidden drugs that were located.

Furthermore, attempting to destroy or conceal evidence has long been considered consciousness of guilt evidence. See *Sanchez v. State,* 2015 WL 2353382, 13-12-00603-CR at 10 (Tex. App.-Corpus Christi 2015, pet. filed)(mem. op. not designed for publication); *Ethridge v. State,* 795 S.W. 2d 281, 285 (Tex. App.-Houston [14th Dist.] 1990, *pet. dism'd,* 812 S.W. 2d 600 (Tex. Crim. App. 1990) (en banc). Consciousness of guilt evidence is one of the strongest kinds of evidence of guilt. *Hyde v. State,* 846 S.W. 2d 503, 505 (Tex. Crim. App. 1993). Thus evidence that Appellant was actively attempting to destroy (or at least conceal within his body) evidence of narcotics at the crime scene was very powerful evidence for showing that Appellant had knowledge and control over the narcotics hidden within his vehicle.

Therefore the evidence that Appellant swallowed a quantity of cocaine and other narcotics immediately prior to being contacted by the police was clearly helpful in determining the truth or falsity of a fact that was of consequence to the case, specifically whether or not Appellant had knowing possession of the narcotics found in his vehicle. That means that evidence was relevant.

Proving possession is not the only grounds for which this evidence was relevant though; the evidence was equally relevant for helping shore up the credibility of one of the State's key witnesses, Ms. Brittany Williams.

Brittany Williams testified not only to observing Appellant swallow some unknown object [RR-III-90] but also to the fact that she did not possess or even know about the narcotics located within the vehicle. [RR-III-98]. Her testimony disclaiming possession and knowledge of the narcotics was critical, since, as already discussed, Brittany Williams was otherwise a plausible alternative suspect for the possession of the narcotics at issue in this case.

Appellant clearly recognized the importance of Brittany Williams' testimony and her potential as an alternative suspect to explain the presence of the narcotics as Appellant proceeded to relentlessly attack Brittany Williams' credibility though out the proceedings. In his opening argument Appellant pointed out that Ms. Williams was also initially charged with this offense and then stressed that she was on parole for delivery of cocaine. [RR-II-148]. Appellant then asserted his theory that it was Ms. Williams who was actually in possession of the contraband narcotics found in the vehicle and stressed her close proximity to the narcotics at issue in the case. [RR-II-149-150]. Appellant continued these arguments throughout the trial,

repeatedly referencing her criminal record and implying she was the person who actually possessed the narcotics.  [RR-III-41, 73, 99-102, 107-109].  And Appellant hit these points hard throughout his closing argument, where he again repeatedly attack Brittany Williams' credibility.  [RR-IV-102-105, 108, 114, 116].  Furthermore, Appellant's closing argument specifically argued that "this case really boils down to you believe Brittany Williams or you don't believe Brittany Williams."  [RR-IV-117].  Therefore Brittany Williams' credibility was clearly a critical issue in this case and the linchpin of the defense strategy.  And more to the point this was an eminently sensible strategy on the Appellant's part for if the jury had disbelieved Brittany Williams' testimony then there was a very real chance they would have acquitted.

Since Ms. Williams' testimony was key in this trial, the evidence that Appellant had cocaine, benzodiazepines, and PCP in his system was highly relevant because it helped substantiate her testimony and thus helped establish her credibility.  State's Exhibits 20 and 21 and the testimony of Sergeant Randolph and Dr. Cano were key for proving that Ms. Williams was telling the truth about observing Appellant swallow something in the car.  The most logical inference from Ms. Williams' observation in the car was that Appellant swallowed a quantity of narcotics, since Appellant would

have no reason to frantically try and swallow something that was not contraband. Moreover, the possibility that Appellant had swallowed narcotics was confirmed by the hospital records and the testimony of Sergeant Randolph and Dr. Cano which established that several narcotics were found in Appellant's system, right after Appellant had suffered seizures that were consistent with the consumption of cocaine and PCP and which occurred within a time frame that was consistent with Appellant having swallowed cocaine wrapped in plastic the night before. [RR-III-121, 124-125, 165, 171-172, State's Exhibits 20-21].

The fact that Ms. Williams was being truthful about having seen Appellant swallow something made the remainder of her testimony where she denied having possession of the narcotics found in the vehicle far more credible. It not only showed that Ms. Williams was being truthful about what she had seen that night, but it also rebutted the idea that her motive in telling the police about Appellant swallowing something was done to curry favor with law enforcement or to shift the blame from herself to the Appellant. Instead it helped prove that her motive in reporting what she saw Appellant do to Sergeant Randolph was a genuine desire to get her cousin needed medical assistance. [RR-III-96, 127-128]. Thus the contested evidence helped shore-up the testimony of a key State's witness and directly

helped rebut one of the main defense arguments in the case (that Ms. Williams was testifying against the Appellant simply to protect herself from criminal prosecution.)

This was clearly proper evidence for the State to present. As a general rule, the State is entitled to present evidence that tends to refute a defensive theory. See *Marles v. State,* 919 S.W. 2d 669, 672 (Tex. App.-San Antonio 1996, pet. ref'd). This principle holds true even when the rehabilitative evidence includes extraneous offense evidence. See *Yohey v. State,* 801 S.W. 2d 232, 236 (Tex. App.-San Antonio 1990, pet. ref'd); *Davis v. State,* 979 S.W. 2d 863, 867 (Tex. App.-Beaumont 1998, no pet). And the defense attacking the credibility of one of the State's key witnesses justifies the introduction of extraneous offense evidence when that evidence helps bolster the credibility of the State's witness. See *Smith v. State,* 211 S.W. 3d 476, 480-481 (Tex. App.-Amarillo 2006, no pet); see also *Montgomery,* 810 S.W. 2d 372 (suggesting that it would be appropriate for the State to use extraneous offense evidence to "shore up" the testimony of one of its witnesses if the defense had actually impeached that witness.)

Thus the evidence about Appellant swallowing narcotics immediately prior to his contact with the police was also helpful for determining the truth or falsity of whether Brittany Williams' testimony concerning whether she

had possession of the narcotics in the vehicle could be believed and since that was also a major issue in the case, the contested evidence was also relevant on that ground.

Accordingly, the evidence of Appellant's actions in swallowing narcotics prior to being contacted by the police was clearly relevant evidence. It helped established the affirmative link necessary to prove the possession element of the offense, and it helped substantiate the credibility of a key State's witness whose credibility was under heavy attack by the defense. The evidence was therefore relevant on two important issues. It also helped give full context to the events surrounding Appellant's arrest and was therefore also important to enable the fact finder to understand exactly what happened at the time of Appellant's stop and arrest. Accordingly, the challenged evidence was highly relevant and as such the trial court did not abuse its discretion in finding this evidence relevant, and since the trial court's determination of relevance is entitled to great deference, that determination of relevance should be upheld.

Of course just because evidence is relevant does not automatically render it admissible. Relevant evidence can still be deemed inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, or needless presentation of cumulative evidence. See TEX. R. EVID. 403; *Casey v. State,* 215 S.W. 3d 870, 879 (Tex. Crim. App. 2007). Thus it is also necessary to consider if this evidence though relevant was unfairly prejudicial.

Under Texas Rule of Evidence 403, evidence is only to be excluded for "unfair prejudice" if the probative value of the evidence is "substantially outweighed" by its danger of unfair prejudice. See also *Feldman v. State,* 71 S.W. 3d 738, 754 (Tex. Crim. App. 2002). "Probative value" refers to how strongly an item of evidence serves to make more or less probable a fact of consequence to the litigation, coupled with the proponent's need for the item of evidence. *Gigliobianco v. State,* 210 S.W. 3d 637, 641 (Tex. Crim. App. 2006). "Unfair prejudice" refers to a tendency to suggest deciding the case on an improper basis. *Id.* In evaluating the relative probative value versus the unfairly prejudicial effect of evidence, a trial court's determination is only to be reversed after a "clear abuse of discretion." *Mozon v. State,* 991 S.W. 2d 841, 847 (Tex. Crim. App. 2004).

The *Gigliobanco* case established six factors trial courts are to consider in determining if evidence is inadmissible under Rule of Evidence 403. *Gigliobanco,* 210 S.W. 3d at 641-642. However, Appellant's brief only raised two of those factors (thus implicitly conceding the other four factors).

It is clear in considering the applicable *Gigliobanco* factors that the trial court did not abuse its discretion in this case in finding the contested evidence was not unfairly prejudicial.

Appellant's two grounds for finding the evidence of Appellant swallowing narcotics was unfairly prejudicial were: 1) that the State did not need the evidence, and 2) that the evidence created a risk that the jury would convict on an improper basis. Neither of those grounds forms a basis for overturning the trial court's ruling given the specific facts of this case.

As to the Appellant's first ground, the State clearly had a compelling need for the contested evidence. As already mentioned, the mere fact that the drugs were found near Appellant was insufficient as a matter of law by itself to prove he was in possession of the drugs. *Cude,* 716 S.W. 2d at 47. Therefore the State needed some additional evidence to link Appellant to the drugs and, given the presence in the vehicle at the time of the police stop of a second person, who was not merely a convicted felon, but who actually was a convicted drug trafficker, this linkage evidence was going to have to be highly compelling to be able to convince a jury beyond a reasonable doubt that the drugs belonged to the Appellant.

Now admittedly, the State did have some other linkage evidence beyond just the evidence of Appellant swallowing narcotics to help connect

the Appellant to the contraband narcotics. In addition to the evidence of Appellant not immediately pulling over when signaled to by the police [RR-II-154-155], there was also the testimony of Ms. Moya describing Appellant fidgeting with the DVD player in his car earlier that day [RR-III-65, 67, 69], and Ms. Moya's assertion that she saw plastic within the DVD slot at that time. [RR-III-68]. There was also the evidence of a tiny, "Batman baggie" found on the Appellant's person along with $404. [RR-II-178-179]. And there was evidence of a digital scale of the type used by drug traffickers that was located in Appellant's vehicle. [RR-II-167-168].

However, while this evidence could have theoretically linked Appellant to the narcotics found in the DVD slot, in practice none of this evidence was particularly compelling as the defense strongly attacked each of these evidentiary points.

Appellant's counsel provided a plausible explanation for why Appellant did not immediately stop his vehicle: that since it was nighttime Appellant wanted to stop his vehicle under a street light. [RR-III-26-27, IV-100-101]. The testimony of Ms. Moya was subject to powerful impeachment given that Ms. Moya was herself a convicted thief [RR-III-70], and had a plausible compelling motive to lie given her very close friendship to Ms. Williams. [RR-III-72]. The "Batman baggie" was not intrinsically a

contraband item and nothing suspicious was found inside of it.  [RR-III-50].

The money seized from Appellant had limited probative value, both due to it

being a comparatively small amount ($404 is certainly not nothing, but it is

not such a large amount either that it automatically screams drug trafficker),

and due to the defense strongly attacking the government's investigation for

not having drug detecting dogs smell the money to determine if it had ever

been near narcotics.  [RR-III-16-20].  And the digital scale was found in a

location that was just as close to Ms. Williams as it was to the Appellant,

and thus was just as capable of supporting Appellant's theory that the drugs

belonged to Ms. Williams as supporting the State's contention that the drugs

belonged to the Appellant.  [RR-III-33-34].

Therefore none of the alternative linkage evidence options the State

had available were particularly compelling, and as such the State had a

substantial need for stronger, more convincing evidence that would

conclusively link Appellant to the contraband narcotics and could not be

explained away by the defense.  The evidence that Appellant had swallowed

some drugs right before being contacted by the police was this stronger,

more convincing linkage evidence.  Appellant could explain away or attack

his not immediately stopping, Ms. Moya's testimony, the "Batman baggie"

the money, and the digital scale but he had no good explanation for the drugs

that were inside his own body, especially since the medical evidence made it clear those drugs had only recently been ingested. And in fact the evidence of Appellant swallowing the narcotics proved so compelling and so irrefutable that Appellant did not even attempt to dispute it, but rather conceded right away in his opening argument that he had swallowed some drugs and instead just tried to argue that he had only swallowed the drugs at the request of Ms. Williams. [RR-II-149].

The evidence of Appellant swallowing the narcotics was the strongest evidence the State had for providing an affirmative link between Appellant and the contraband found in his vehicle as it was the only linkage evidence in this case that the defense could not plausibly challenge. And since the Appellant did attack all of the State's other linkage evidence, this evidence clearly had great probative value. See *Johnson v. State,* 68 S.W. 3d 644, 651-652 (Tex. Crim. App. 2002)(holding that when the defense challenges the probative value of the State's other evidence addressing a certain issue then extraneous offense evidence that also helps prove the disputed issue becomes much more probative.) Thus the State clearly had substantial need of this evidence to prove the possession element of the charged offense.

Additionally, even if there was some other evidence, weak though it may have been, to establish an affirmative link between the Appellant and

the narcotics in the DVD slot, the evidence of Appellant swallowing the narcotics was the only evidence the State had that could help substantiate Ms. William's testimony and rebut the defense theory that she was lying and that she was the true possessor of the contraband narcotics. As already discussed, the defense's entire strategy was based on attacking Ms. Williams's credibility and trying to argue that she was the person who actually possessed the narcotics at issue in this case. Therefore being able to validate her testimony was essential to the State's case. The evidence of Appellant swallowing an unknown object (which subsequent medical testimony established must have been narcotics) was not merely the best evidence the State had to validate Ms. William's testimony, it was the only evidence the State had that could do that and as such it was the only evidence the State had that could conclusively disprove the defense theory that Ms. Williams was the person who actually possessed the narcotics that night. The State had no other way to do this. There were no other witnesses in the car that the State could call, and certainly without outside confirmation from a reliable source Ms. William's testimony would be highly suspect given her criminal record and her having a clear, compelling motive to lie so that she could avoid prosecution herself. Therefore since Ms. William's credibility was such an important issue in the trial, and since

the evidence of Appellant swallowing the narcotics was the only evidence the State had to show Ms. Williams was testifying truthfull, the State had great need of this evidence on that ground as well.

Thus with the State clearly having a compelling need for the challenged evidence, it becomes necessary to consider Appellant's second claim of unfair prejudice, that the evidence created a grave danger of the jury making its decision on an improper basis, and on that point there was little danger of this evidence improperly influencing the jury.

The State was not offering evidence of some disparate criminal episode that was unconnected to the charged offense in time or space. Quite the contrary, the challenged evidence stemmed from Appellant's actions which occurred contemporaneous with the charged offense. Moreover the evidence was persuasive that the drugs Appellant swallowed were in fact part of the exact same consignment of drugs at issue in this case as they were similarly wrapped, were located in the same area at the same time, and both the swallowed drugs and the hidden drugs included cocaine. Thus this evidence related directly to the charged offense. Evidence that relates directly to the charged offense does not have great potential to impress the jury in an irrational way. *State v. Mechler,* 153 S.W. 3d 435, 440-441 (Tex. Crim. App. 2005).

Nor was the evidence that Appellant had consumed some drugs particularly inflammatory. The challenged evidence was not any more heinous than the charged offense. As such the risk that the jury would consider the evidence that Appellant had swallowed some narcotics in an irrational way was slight. See *Rogers v. State,* 2006 WL 240229, 2-04-529-CR at 8 (Tex. App.-Ft. Worth, no pet)(mem. op. not designated for publication).

As such even if the evidence that Appellant swallowed some narcotics right before being contacted by the police is deemed to have some risk of unfair prejudice, that risk is still substantially outweighed by the probative value of the evidence. Rule of Evidence 403 requires the probative value of evidence to be *substantially outweighed* by the danger of unfair prejudice. In this case the probative value of the challenged evidence was extremely high both as the strongest evidence for establishing the affirmative link required to prove Appellant had knowing possession of the narcotics found inside the vehicle and also as the only evidence for rehabilitating Brittany Williams' credibility after it was attacked by the defense. Thus it would take extremely prejudicial evidence to substantially outweigh the probative value of this evidence. Evidence of other drug use is not nearly so inflammatory as to constitute extreme prejudice and thus the danger of

unfair prejudice from this evidence clearly did not substantially outweigh the probative value of the evidence.

Therefore the trial court also acted well within its sound discretion in finding the evidence of Appellant swallowing narcotics immediately prior to being contacted by the police was not unfairly prejudicial. And since the evidence was relevant and was not unfairly prejudicial, it was properly accepted into evidence, and the trial court's ruling admitting that evidence should therefore be affirmed.

## II. In the alternative, any error from the admission of the evidence of Appellant swallowing narcotics immediately prior to being contacted by the police was harmless.

In the alternative, even if there was error in the admission of the evidence of Appellant swallowing the narcotics, that error is harmless given the overwhelming other evidence of Appellant's guilt.

The erroneous admission of evidence is non-constitutional error under Rule 44.2(b) of the Texas Rules of Appellate Procedure. See *Ketchum v. State,* 199 S.W. 3d 581, 593 (Tex. App.-Corpus Christi 2006, pet. ref'd). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Casey,* 215 S.W. 3d at 885.

In the present case, the State believes the objected to evidence was powerful evidence that was highly relevant for establishing both that there was an affirmative link between Appellant and the contraband and for proving that the testimony of Brittany Williams can be believed. However, Appellant's brief contends the State did not actually need the objected to evidence. Should this Honorable Court accept that argument and agree with Appellant that the State did not actually need this evidence, than logically the admission of the evidence must have been harmless. After all, if the State did not need this additional evidence that can only mean that the remainder of the State's evidence was overwhelming for establishing Appellant's guilt. (If the remainder of the State's evidence was not overwhelming for proving Appellant's guilt then it obviously cannot be argued that the State did not need this additional evidence. The additional evidence would only not be needed if the State had already conclusively proven Appellant's guilt without it.) And if the remainder of the State's evidence was overwhelming evidence of guilt than the objected to evidence could not have impacted the verdict. See *Gonzalez v. State,* 2014 WL 4049800, 13-13-00427-CR at 14 (Tex. App.-Corpus Christi 2014, pet. ref'd)(finding that even in a case where the erroneously admitted evidence "played a large part in the State's case" the admission of that evidence was

still harmless given the extent of the State's other evidence.")

Appellant simply cannot have it both ways. Either the State' other evidence was not overwhelming, in which case the State did have a legitimate need for the objected to evidence which means that evidence was not unfairly prejudicial and thus was properly admitted, or the State's other evidence was overwhelming in which case the admission of the challenged evidence did not affect the verdict because the Appellant would have been found guilty regardless of whether the evidence was admitted or not. Under either option Appellant is not entitled to any relief, and as such the trial court's judgment should be affirmed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the State prays that this

Honorable Court affirm the judgment of the trial court.

.

**Respectfully submitted,**


**STEPHEN B. TYLER**
**CRIMINAL DISTRICT ATTORNEY**

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone:  (361) 575-0468
 Facsimile: (361) 576-4139


 **ATTORNEYS FOR THE APPELLEE,**
 **THE STATE OF TEXAS**

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I, Brendan Wyatt Guy, Assistant Criminal District Attorney, Victoria County, Texas, certify that the number of words in Appellee's Brief submitted on July 17, 2015, excluding those matters listed in Rule 9.4(i)(1) is 7,461.

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone:  (361) 575-0468
 Facsimile: (361) 576-4139

# CERTIFICATE OF SERVICE

I, Brendan Wyatt Guy, Assistant Criminal District Attorney, Victoria County, Texas, certify that a copy of the foregoing brief has been served on W. A. White, P. O. Box 7422, Victoria, Texas 77903, Attorney for the Appellant, James Cortney Dean, by electronic mail on the day of July 17, 2015.

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone: (361) 575-0468
Facsimile: (361) 576-4139