**Lonnie DAVIS, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–97–146–CR.**

Court of Appeals of Texas, Beaumont.

Submitted Nov. 5, 1998.

Decided Dec. 9, 1998.

---

Stephen C. Taylor, Galveston, for appellant.

John S. Holleman, District Attorney, William Lee Hon, Assistant District Attorney, Livingston, for state.

Before WALKER, C.J., and BURGESS, and STOVER, JJ.

## OPINION

EARL B. STOVER Justice.

A jury convicted appellant Lonnie Davis, Jr. of the offenses of aggravated kidnapping, aggravated sexual assault, and aggravated assault, all arising out of the same criminal episode. The judgment contained an affirmative finding of the use of a deadly weapon. For each offense, Davis was given a sixty (60) year sentence in the Texas Department of Criminal ·Justice—Institutional Division; the sentences were to run concurrently.

Davis brings twelve points of error on appeal. Points of error one through six challenge the legal and factual sufficiency of the evidence to support each of the three convictions. Points seven through twelve contend the trial court erred in admitting testimony regarding extraneous offenses. We consider the sufficiency points first.

## LEGAL AND FACTUAL SUFFICIENCY POINTS

■ A sufficiency of the evidence challenge is measured by the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). A hypothetically correct charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

When reviewing a legal sufficiency point, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In determining the factual sufficiency of the evidence, we review all of the evidence without the prism of "in the light most favorable to the prosecution," and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Defense evidence and alternate reasonable hypotheses may be considered. *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed).

In our sufficiency review, we are governed by the fact that the jury is the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given to the testimony. TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979). The jury may believe or disbelieve all or any part of a witness's testimony, even though the witness's testimony has been contradicted. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). Reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996), *cert. denied*, ─ U.S. ──, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997).

■ Points of error one and two challenge the legal and factual sufficiency of the evidence supporting the aggravated kidnapping offense. Davis contends the evidence failed to prove beyond a reasonable doubt that he abducted the victim by using or threatening to use deadly force. In points of error three and four, Davis claims the evidence is legally and factually insufficient to support the aggravated sexual assault charge. The evidence, argues Davis, did not establish he intentionally or knowingly penetrated the victim's female sexual organ or her mouth with his sexual organ "due to appellant, by acts or words occurring in the presence of [DP] threaten to cause the death, serious bodily injury, or kidnapping of any person."

Points of error five and six pertain to the aggravated assault conviction wherein Davis claims the evidence failed to prove he caused serious bodily injury to the victim or that he used or exhibited a deadly weapon during the commission of the assault. We overrule points of error one through six and find the evidence is both legally and factually sufficient to support the guilty verdicts on aggravated kidnapping, aggravated sexual assault, and aggravated assault. We look now at the evidence.

The victim DP testified that the events giving rise to the charged offenses occurred on May 16, 1996. A nurse at the emergency room testified DP told her the offense took place from approximately 2 p.m. to 7 p.m. DP stated that Davis, after threatening to rape her and while holding a knife in his hand, dragged her against her will out of his mother's home and carried her to his own house located just behind his mother's place. While he and DP were still inside his mother's home, he suddenly announced to DP he was going to rape her, they would go to his house in the back, and she was not leaving. Davis then picked up a knife and struck her in the face with his fist. As he opened the door of his mother's house, the victim, fearing for her life and "hollering for help," ran from Davis in a futile attempt to escape.

Three witnesses watched the scene unfold. Joe King, a neighbor across the street, testified he saw DP "bail[ ] off the porch to run[,]" only to slip and fall at the edge of the pavement. While DP was screaming, Davis picked her up and carried her to his house. Although Mr. King testified she could have been playing or teasing, he also stated she "was screaming for help all the time at the same time." King heard her say, "Please. Oh, Lord, please, somebody help me." King's wife Shirley and her niece, Arneetra Mays, both saw Davis carry DP, while she was screaming and struggling to escape, into the little house belonging to Davis. Although Mrs. King mentioned calling the police to her husband, he told her to "just leave it alone." According to Mr. King, "we didn't want to get involved in it."

Once inside Davis's house, DP testified the ordeal continued. She stated he penetrated

her vagina and her mouth with his penis, and he attempted to penetrate her anally. During the incident, Davis repeatedly struck her, pulled her hair, and always had the knife somewhere on the bed; she testified she feared for her life. He held the knife to her and rubbed it several times up her legs. According to DP, at no time during the ordeal did she consent to what was occurring; Davis confined her against her will. Bruised and in pain, she was eventually allowed to leave. A few hours later, she reported the incident to the police, who came to her father's home and took her to the police station. Later she went to the hospital where she was examined and treated. Hospital medical records reveal bruises on DP's face and around both eyes, on the upper right thigh, right arm, and left knee, and bite marks on the right thumb; there was also redness in the vaginal and rectal areas.

The import of the testimony of Davis' witnesses is that he could not have committed the charged offense, because he either was not there during part of the time DP said the offense occurred, or, if he was there, he only had consensual sex with her and did not injure her. Davis' sister, Antoinette Williams, testified she did not see Lonnie at their mother's house while she (Antoinette) was there during the lunch hour on May 16, 1996, but she did see DP coming from Lonnie's house. Davis' mother, Kathryn Williams, testified Davis walked into her house between 4:35 and 5:00 p.m. to get the birthday present she had for him. Mabel Denson, owner of a barber/beauty shop close to Davis' home, testified that, although there were a number of other people in her shop that day, she specifically remembered DP coming in the shop and asking for Davis. Thelma Chansler, a neighbor of Kathryn Williams and Davis, was working in her yard sometime that evening. Hearing DP "holler," Ms. Chansler turned around and watched her go out the gate and up the street.

In reviewing the record before us, we conclude that under the standards set forth in *Jackson* and *Clewis*, the evidence is both legally and factually sufficient to support the convictions for aggravated kidnapping, aggravated sexual assault, and aggravated assault.[1]

The evidence supports an abduction, as well as the intent to inflict serious bodily injury on DP or violate or abuse her sexually. The evidence likewise supports DP's claim that Davis penetrated her vagina and mouth with his sexual organ without her consent, and that he placed her in fear that death, serious bodily injury, or kidnapping would be imminently inflicted on her. The record also supports the claim that Davis used or exhibited a deadly weapon in the course of the offense. Points of error one through six are overruled

## EXTRANEOUS OFFENSE POINTS

In points of error seven through twelve Davis claims the trial court erred in admitting the extraneous offense testimony of Audrey Wallace and Doris Flenoury during the guilt/innocence phase of the trial. The admission of that testimony, according to appellant, violated TEX.R. EVID. 402, 403, and 404. At the outset we note appellant did not object at trial under TEX.R. EVID. 403; consequently, we do not address points of error eight and eleven which raise Rule 403 grounds. TEX.R.APP. P. 33.1(a); *see Montgomery v. State*, 810 S.W.2d 372, 388–89 (Tex.Crim.App.1991)(op. on reh'g); *Peoples v. State*, 874 S.W.2d 804, 809 (Tex.App.— Fort Worth 1994, pet. ref'd).

As we understand points of error seven, nine, ten, and twelve, appellant claims, in part, that the trial court erred in (a) failing to give a specific ruling explaining how the extraneous offense testimony was relevant under Rule 402 and (b) failing to state the purpose of the evidence under Rule 404(b).[2] After hearing argument by both the State

---

1. The elements of aggravated kidnapping are found at TEX. PEN CODE ANN. § 20.04 (Vernon Supp.1999); aggravated sexual assault at TEX PEN.CODE ANN. § 22.021 (Vernon Supp.1999); and aggravated assault at TEX. PEN CODE ANN. § 22.02 (Vernon 1994).

2. Although Davis claims the trial court failed to state the purpose of the evidence, we note the trial judge expressly stated the evidence was admissible under a Rule 404(b) exception to "refute the consent issue ... and, also, to show intent."

and defendant's counsel, the trial court overruled appellant's objections regarding the extraneous offenses. Under Rules 402, 403, and 404, we find no case holding that the trial judge has to explain his decision to admit extraneous offense testimony, and appellant cites us to none. *See Santellan v. State,* 939 S.W.2d 155, 167 n. 19 (Tex.Crim. App.1997) (Even when the trial judge does not specify his reasons on matters of admissibility of evidence, the decision will be upheld if it is correct on any theory of law.).

 In addition to the procedural challenges under Rules 402, 403, and 404(b), Davis also claims in points of error seven and ten that the trial court erred in admitting the extraneous offense testimony, because it was not relevant. In contrast, the State contends the testimony of Wallace and Flenoury was admissible as rebuttal evidence to Davis's defensive theory of consent. *See Rubio v. State,* 607 S.W.2d 498 (Tex.Crim.App.1980); *Wiggins v. State,* 778 S.W.2d 877, 883–85 (Tex.App.—Dallas 1989, pet. ref'd).

Initially, the State proffered into evidence a severely redacted version of Davis's statement to the police. Shortly thereafter, appellant, under the rule of optional completeness, read the entire statement to the jury. In the unredacted statement, Davis not only claims that DP consented to have sex with him, but that he also agreed to pay her for it. *Cf. Blevins v. State,* 884 S.W.2d 219, 221, 223 (Tex.App.—Beaumont 1994, no pet.) (Defense counsel's offer of defendant's entire statement into evidence under optional completeness rule opened the door to the admission of extraneous offenses.).

 As a general rule, the State is entitled to present on rebuttal any evidence that tends to refute a defensive theory and the evidence introduced to support that theory. *Marles v. State,* 919 S.W.2d 669, 672 (Tex. App.—San Antonio 1996, pet. ref'd). The possibility that such rebuttal evidence may encompass extraneous offenses or acts on the part of the defendant does not preclude its admission into evidence. *Yohey v. State,* 801

S.W.2d 232, 236 (Tex.App.—San Antonio 1990, pet. ref'd). Because appellant's statement raised the issue of the defensive theory of consent, the State was then entitled to rebut that theory even if the statement included extraneous acts or offenses. *See Rubio,* 607 S.W.2d at 501.

 Although we find that Davis opened the door to rebuttal evidence concerning the defensive theory of consent, we are still required, under a Rule 404(b) objection, to consider whether the extraneous offense testimony was relevant to any fact of consequence in the case other than character conformity. *See Rankin v. State,* 974 S.W.2d 707, 719–20 (Tex.Crim.App.1996) (op. on reh'g); *Montgomery v. State,* 810 S.W.2d at 387–88. We conclude it was. Testimony that Davis had on prior occasions and under similar facts restrained Wallace and Flenoury for several hours, while either attempting and/or completing anal sex[3] without their consent, makes it more likely that Davis intended to restrain, beat, and have anal, oral, and vaginal sex with DP without her consent. Intent to have sex without the consent of DP was an elemental fact. Since appellant's statement raised the defensive issue of consent, the State could introduce evidence that made "less probable" that defensive issue. *See Montgomery v. State,* 810 S.W.2d at 387. We conclude the trial court did not err in admitting the testimony regarding the extraneous offenses. Points of error seven through twelve are overruled.

The trial court judgment is affirmed.

AFFIRMED.

---

**3.** Audrey Wallace testified to Davis's hitting her and compelling her to perform both oral and anal sex.