

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00242-CR

———————————————————

TIMOTHY LYNN BURRELL, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1539602R

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

In his appeal from his conviction for failure to comply with a sex offender registration requirement, Appellant Timothy Lynn Burrell argues that the trial court should have excluded testimony about a parole warrant for his arrest and statements he made to his parole officer. We modify the judgment to recite the correct statute and affirm the judgment as modified.

## BACKGROUND

The State charged Burrell with failing to verify his sex offender registration within ninety days of his last verification or within the statutory grace period. *See* Tex. Code Crim. Proc. Ann. arts. 62.058, 62.102.[1] At his trial, Fort Worth police officer Brian Bice testified about Burrell's registration verification requirement. Bice is one of three registration officers with the Fort Worth Police Department's sex crimes recognition, apprehension, and monitoring (SCRAM) unit. Bice testified that every ninety days, Burrell had to meet with a SCRAM unit registration officer to verify his registration. Bice stated that a person generally may not meet with a registration officer without an appointment, and Burrell reported for his December 28, 2016 appointment with Bice as scheduled.

---

[1]The trial court's judgment states that the statute for the offense is Texas Code of Criminal Procedure article 62.10. The correct offense statute is Texas Code of Criminal Procedure article 62.102. *See* Tex. Code Crim. Pro. Ann. art. 62.102; Act of May 26, 2005, 79th Leg., R.S., ch. 1008, § 1.01, 2005 Tex. Gen. Laws, 3385, 3407 (redesignating article 62.10 as article 62.102).

At that appointment, Bice informed Burrell of his next appointment date—March 27, 2017. Bice also gave Burrell a "blue card"—a card printed by a registration officer on blue paper that (1) confirms a person's current registration verification and (2) states the person's next appointment date. However, Burrell did not appear for his March 27 appointment. By April 4, 2017, the end of the statutory grace period, Burrell still had not met with a registration officer. *See id.* arts. 62.058, 62.102. Consequently, a warrant was issued for Burrell's arrest.

Another Fort Worth police officer testified that on June 6, 2017, she and her partner responded to a tip from "a private investigator, bounty hunter person" that Burrell was at a house on Sycamore School Road. They went to the location and found Burrell in the attic hiding behind the A/C unit.

During its case-in-chief, the State notified the trial court of its intent to call Burrell's parole officer, Lashantria Kennedy, to elicit testimony about Burrell's parole and about "any knowledge she may have about [Burrell's] failure to report." The prosecutor then took Kennedy on voir dire outside the presence of the jury. Kennedy stated that on December 30, 2016, a parole warrant had been issued for Burrell and in January 2017, she told him about the warrant via telephone. She further stated that she spoke to him in June 2017 after his arrest, and he informed her that "he did not register because he did not get a new blue card to register when he was registering in December of 2016." After eliciting the testimony, the State told the court that "there's kind of two parts of" the proffered testimony: "One, that there's a parole

3

warrant pending throughout this process which the State would allege would be motive as to why he wouldn't want to show up to register. Secondly, the other issue is [Burrell's] statements. We would offer both to the Court for its consideration." After Burrell's objections and voir dire examination of Kennedy, the State notified the court that it would rest rather than call Kennedy in its case-in-chief but that it "might reoffer this [testimony] as a rebuttal."

Burrell called Abbie Phillips, his current girlfriend and former landlord. Phillips testified that she drove Burrell to the police station for his March 27 appointment. The exchange between Burrell's counsel and Phillips included the following exchanges:

> Q. How do you know Tim Burrell?
>
> A. Through his parole officer. She prefers me for a place to live.
>
> Q. She did what?
>
> A. Preferred him to have a place to live.
>
> . . . .
>
> Q. Now, Ms. Phillips, do you have a number of apartments you rent to parolees?
>
> A. I have houses. I rent rooms.
>
> Q. Okay. And you rent these rooms to the parolees through their parole officer; is that correct?
>
> A. Yes.

4

Q.     Okay.  Did you ever visit with Tim Burrell?  Have you visited with Tim Burrell over the months?

A.     Yes.

Q.     And what's the relationship with Tim Burrell now?

A.     We are—he's my boyfriend.

Q.     I'm sorry?

A.     He's a boyfriend of mine.  He's my boyfriend.

Q.     Okay.  Do you know about—do you know the past of Tim Burrell?

A.     Yes.

Q.     How do you know that?

A.     Before they come into the home, I get the history.  And then he told me up front.  Before he moved in, he told me about his history.

Q.     Okay.  So you know through—you knew through the parole officer?

A.     Yes.

After that testimony, the prosecutor had the following exchange with the trial court:

MR. HILL: Defendant's motion in limine, but just to be completely safe, at this point I want to ask her some questions about whether or not she was aware he had a parole warrant.

THE COURT:     They've talked about parole so it's wide open.

MR. HILL:  Thank you.

5

The prosecutor then questioned Phillips about whether she knew that as of December 30, 2016, Burrell had an active parole warrant. She answered that she and Burrell did not know about the warrant when he went to his March 27 appointment.

The State then called Kennedy as a rebuttal witness. Kennedy testified that from December 30, 2016, through January 2017, she spoke to Burrell twice on the telephone, and she told him that a parole warrant had been issued for him. She explained that the warrant section of her division issues a parole warrant when it has probable cause to believe that a person has violated one or more of the conditions of his parole. *See Heard v. State*, 280 S.W.3d 419, 421 n.1 (Tex. App.—Fort Worth 2009, pet. ref'd). She further testified, as she had on voir dire, that she spoke to Burrell after he had been arrested, and he told her that he had not kept his March 27 appointment because he had not received a blue card and did not know when his next report date was.

The jury found Burrell guilty, and he pled true to a habitual offender paragraph in the indictment. The trial court assessed punishment at thirty-five years' confinement. Burrell now appeals.

## DISCUSSION

### I. The parole warrant evidence was admissible without notice.

In Burrell's first point, he challenges the trial court's admitting testimony about the parole warrant. Burrell contends that the trial court should have excluded the evidence because although he requested notice of the State's intent to introduce

6

extraneous offense evidence under Texas Rule of Evidence 404(b) and Texas Code of Criminal Procedure article 37.07, the State failed to notify him of its intent to introduce evidence of the parole warrant. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(g); Tex. R. Evid. 404(b). The State counters that because it did not offer the evidence during its case-in-chief, it did not have to provide notice to Burrell. *See Jaubert v. State*, 74 S.W.3d 1, 3–4 (Tex. Crim. App. 2002). We agree.

### A.     Standard of Review

We review a trial court's admission of evidence, including extraneous-offense evidence, for abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Under this standard, we will uphold the trial court's ruling unless it was so clearly wrong as to lie outside the zone within which reasonable people might disagree. *Id.* at 343–44; *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016).

### B.     Neither Rule 404(b) nor Article 37.07 Required Notice.

Texas law permits the admission of a defendant's extraneous offenses or bad acts only under certain circumstances. *See* Tex. R. Evid. 403, 404(b). Under rule 404(b), on timely request by a defendant, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce extraneous offense evidence in its case-in-chief. Tex. R. Evid. 404(b). Article 37.07 contains a similar requirement for the State to provide notice of intent to introduce extraneous offense evidence "in the same manner required by Rule 404(b)" when the defendant has timely requested such notice. Tex. Code Crim. Proc. Ann. art. 37.07 § 3(g). Thus,

7

under either rule 404(b) or article 37.07, the State is not barred from using extraneous offense evidence in *rebuttal* despite not having provided notice of its intent to do so. *Jaubert*, 74 S.W.3d at 3–4.

"A trial court is given wide latitude to admit or exclude evidence of extraneous offenses." *Hudson v. State*, 112 S.W.3d 794, 801 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). And, generally, "the State is entitled to present on rebuttal any evidence that tends to refute a defensive theory and the evidence introduced to support that theory," and "[t]he possibility that such rebuttal evidence may encompass extraneous offenses or acts on the part of the defendant does not preclude its admission into evidence." *Davis v. State*, 979 S.W.2d 863, 867 (Tex. App.—Beaumont 1998, no pet.).

To establish a person has committed an offense of failing to comply with a sex offender registration requirement, the State must establish that the person did so knowingly or recklessly. *Robinson v. State*, 466 S.W.3d 166, 170, 172 (Tex. Crim. App. 2015). Because the State decided not to call Kennedy during its case-in-chief, to prove Burrell's mental state, the State relied on Officer Bice's testimony that (1) at Burrell's December 28 appointment, Bice told him of his March 27 appointment and gave him a blue card stating that date and (2) Burrell did not return to verify his registration at any time before April 4.

Burrell then called Abbie Phillips. She testified that Burrell did not miss his March 27 appointment and that she knew this because she not only drove him to the

police station on that date but also walked him inside. She stated that she was sure of the date because it was "right at [her] sister's birthday." In response to questioning by the State, she testified that neither she nor Burrell knew about the parole warrant on March 27, 2017.

After Phillips's testimony, the State called Kennedy as a rebuttal witness and elicited testimony that she told Burrell in January 2017 that there was a parole warrant for his arrest. She further testified that she spoke to Burrell after his arrest, and he acknowledged that he missed his March 2017 appointment and explained that he had not received a blue card and therefore did not know the date of his next registration appointment. Kennedy also stated that if Burrell had reported for his March 27 appointment, law enforcement officers would have attempted to arrest him on the parole warrant. *See Cook v. State*, 832 S.W.2d 62, 68 (Tex. App.—Dallas 1992, no pet.) (noting that a parole warrant authorizes all officers to detain and to take custody of the releasee). The State did not ask—and Kennedy did not testify—about what parole conditions Burrell had allegedly violated to prompt the parole warrant.

Burrell's defense, on which he introduced evidence, was that he *did* report for his appointment, just like he had for every previous appointment, and Bice was mistaken in believing he did not. It was after Burrell raised this defense that the State elicited the parole warrant testimony to explain why Burrell could have received notice of his next appointment date yet nonetheless decided not to report on March 27 or by

9

April 4. Because this testimony was offered by the State in rebuttal to Burrell's evidence, the State did not have to provide notice under rule 404(b) or article 37.07.

The record also sustains the trial court's discretion in determining that the State did not use the claim that Phillips's testimony was appropriate rebuttal as a ruse to avoid pretrial disclosure. *Zafar v. State*, No. 02-17-00119-CR, 2018 WL 2248483, at *7 (Tex. App.—Fort Worth May 17, 2018, pet. ref'd) (mem. op., not designated for publication) (trial court did not abuse its discretion in deciding notice of rebuttal witness not required in face of argument that witness was not "true rebuttal witness.").

We overrule Burrell's first point.

## II. Evidence rules did not require exclusion of the parole warrant evidence.

Burrell argues under his second point that the trial court's decision to let the jury hear evidence that he had a parole warrant was an abuse of discretion because the evidence was "tantamount to hearing that [he] ha[d] committed an extraneous bad act." *See* Tex. R. Evid. 403. He contends that the evidence's probative value was substantially outweighed by the danger of unfair prejudice and that the evidence had a tendency to confuse or distract the jury from the main issues, and the evidence was therefore inadmissible under Texas Rule of Evidence 403. We hold that the evidence of the existence of the parole warrant was probative of Burnell's motive not to report—the possibility of arrest should he have reported. Further, that probative

10

value was not outweighed by the potential for the evidence to prejudice, confuse, or distract the jury.

### A. We sustain evidence admission on any applicable legal theory.

Burrell first argues that being on parole is not the same as having an active parole warrant, and, therefore, his eliciting testimony about being on parole did not open the door to questioning about the existence of a parole warrant. However, even if the trial court used the wrong reasoning in its decision to admit the parole warrant evidence, if the ruling was correct on any theory of law applicable to this case, we will sustain it. *See Jenkins v. State*, 493 S.W.3d 583, 607 (Tex. Crim. App. 2016); *Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999). Thus, even if Burrell did not open the door to the challenged testimony, we sustain the admission if correct on any applicable legal theory.

### B. The parole warrant evidence had noncharacter-conformity relevance and fell within a rule 404(b) exception.

Whether extraneous offense evidence is admissible turns on whether it has noncharacter-conformity relevance and its probative value is not substantially outweighed by one of the dangers listed in rule 403. *See* Tex. R. Evid. 403, 404(b); *Swarb v. State*, 125 S.W.3d 672, 682–83 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). Under rule 404(b), extraneous offense evidence may be admitted for noncharacter-conformity purposes, such as proving motive or to rebut a defensive

11

theory. Tex. R. Evid. 404(b)(2); *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

Here, the State elicited testimony about the parole warrant to establish a motive for Burrell to choose not to attend his March 27 appointment—fear of being arrested—in contradiction to Burrell's defense that he kept the appointment. *See Roberts v. State*, 29 S.W.3d 596, 601 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (noting that extraneous offense evidence may be relevant to rebut a defensive theory). The evidence thus had noncharacter-conformity relevance: it made more probable the evidentiary fact of motive, and it made less probable the defense's evidence that he kept his registration appointment. *See Swarb*, 125 S.W.3d at 683; *Stern v. State*, 922 S.W.2d 282, 287 (Tex. App.—Fort Worth 1996, pet. ref'd) (stating that though not required, "the prosecution is always entitled to offer evidence of motive to commit the charged offense because it is relevant when it fairly tends to raise an inference that the accused had a motive to commit the crime alleged"). Accordingly, the evidence was not inadmissible under rule 404(b). *See* Tex. R. Evid. 404(b).

## C.     The evidence's probative value outweighed any prejudicial effect.

Under rule 403, relevant, otherwise-admissible evidence must be excluded when its probative value is substantially outweighed by a danger of (1) unfair prejudice, (2) confusion of the issues, or (3) misleading the jury.[2] Tex. R. Evid. 403.

---

[2]Relevant evidence should also be excluded if its probative value is substantially outweighed by a danger of either undue delay or needlessly presenting cumulative

12

Evidence's probative value turns on its "inherent probative force . . . —that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

The phrase "unfair prejudice" means a "tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one," such as if "it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Id.* at 879–80. "The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *Id.* at 883. "Evidence is unfairly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence." *Id.* A danger of "confusion of the issues" refers to a tendency of the evidence "to confuse or distract the jury from the main issues in the case." *Id.* at 880. A danger of misleading the jury refers to "a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds." *Id.* In sum, when a defendant objects to evidence on these grounds, a trial court must balance the inherent probative force of the proffered evidence and the proponent's need for that evidence against any tendency of the evidence to suggest decision on an improper basis, to confuse or

evidence. Tex. R. Evid. 403. However, Burrell does not argue that the parole warrant evidence should have been excluded on either of these two grounds.

13

distract the jury from the main issues, or to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence. *Id.* at 880.

Whether Burrell timely verified his registration was the ultimate issue in the case. Burrell sought to show through Phillips and through his questioning of the State's witnesses that he kept his March 27 appointment date to verify his registration, just like he had, without fail, kept all his other appointments in the previous three years. The probative force of the parole warrant evidence is its ability to provide an explanation for why Burrell would decide for the first time to not return to the SCRAM unit office to verify his registration. It made Bice's testimony—that Burrell did not verify his registration by the deadline to do so—more probable. And the State had a need for the evidence because Burrell presented evidence directly contradicting Bice's testimony that he did not keep his appointment to verify his registration.

The danger of unfair prejudice, on the other hand, was slight. Other testimony, elicited through cross-examination of Phillips, informed the jury that on December 28, Burrell was arrested for some unspecified offense.[3] The jury thus had already

---

[3]Phillips was initially confused about whether Burrell was arrested in December 2016 or at his March 27 appointment but in further questioning stated that it was in December, and other statements she made suggested that she may have meant that he was arrested at his December 28 appointment. Kennedy also testified that Burrell was arrested on some other charge on December 28, but she stated that he was taken to the hospital rather than to jail and that when the hospital discharged him, he was released on bond. However, no testimony from Kennedy or Phillips made clear why he went to the hospital or why he was arrested before being taken to the hospital.

heard that he had been arrested for an offense besides the one for which he was being tried. The State asked no questions about which parole conditions Burrell had allegedly failed to follow, and the mere existence of a parole warrant in this case was unlikely to arouse the jury's hostility toward him without regard to the evidence's logical probative force. Without eliciting further testimony about the basis for the parole warrant, the evidence had a low tendency to prove some adverse fact not properly in issue and presented little danger of confusing the jury from the issue in the case or of the jury giving the evidence undue weight. *Id.*

The trial court in this case could have reasonably concluded that the parole warrant evidence's probative value was not substantially outweighed by a danger that the jury would decide the case on an improper basis, a danger that the jury would give it undue weight, or a danger that it would distract the jury from the main issue in the case. We overrule Burrell's second point.

## III. Kennedy's testimony did not violate Burrell's Fifth Amendment right against self-incrimination.

In Burrell's third point, he challenges the trial court's admission of Kennedy's testimony about his explanation to her about why he missed his March 27 appointment. He contends that the testimony violated his Fifth Amendment right against self-incrimination because when he made the statement to her, he was in

---

Kennedy was not sure how he was able to bond out given that by the time the hospital released him, the parole warrant had been issued.

custody, she was acting as a law enforcement officer, and she did not give him his *Miranda* warning.

## A. *Miranda* warnings apply only to custodial questioning by law enforcement.

Although on parole, Burrell retained his right against self-incrimination for statements that would incriminate him for a different offense. *See Chapman v. State*, 115 S.W.3d 1, 5–6 (Tex. Crim. App. 2003). This right, however, "does not preclude a witness from testifying voluntarily in matters which may incriminate him." *Id.* at 6 (quoting *Minnesota v. Murphy*, 465 U.S. 420, 427–28, 104 S. Ct. 1136 (1984)). And, generally, *Miranda* warnings must be given only in the context of custodial questioning by law enforcement officers or their agents. *Wilkerson v. State*, 173 S.W.3d 521, 527 (Tex. Crim. App. 2005).

Not all government employees are law enforcement state agents who are required to Mirandize. *Id.* Rather, "[o]ur law recognizes that different types of state employees serve different roles." *Id.* at 528. The job of a general law enforcement officer is "to ferret out crime, investigate its commission, arrest the perpetrator, and gather evidence for a possible prosecution." *Id.* Parole officers, on the other hand, are not charged with the general enforcement of criminal statutes or with investigating crimes outside the context of determining whether a releasee has failed to comply with his or her parole conditions. *See* Tex. Gov't Code Ann. § 508.001; *cf. Wilkerson*, 173 S.W.3d at 528 (quoting 2 Wayne LaFave & Jerold Isreal, *Criminal Procedure*

§ 6.10(c) (1991 Supp.) for the proposition that *Miranda* has been held inapplicable to questioning by a parole officer when the parole officer has not been given police powers).

Nevertheless, under Texas law a parole officer is considered a law enforcement agent for *Miranda* purposes when the parole officer conducts a custodial interview "(explicitly or implicitly) on behalf of the police for the primary purpose of gathering evidence or statements to be used in a later criminal proceeding against the interviewee." *Wilkerson*, 173 S.W.3d at 531. Accordingly, if Kennedy was acting as an agent of the law enforcement officers investigating Burrell's registration offense when he made his statements to her about his failure to appear and his reason for doing so, then she was "bound by all constitutional and statutory confession rules, including *Miranda*." *See id.* at 529–30. If, on the other hand, Kennedy was "working on a path parallel to, yet separate from, the police, *Miranda* warnings [were] not required." *See id.* at 529.

We test the trial court's determination under an abuse of discretion standard, and to establish an abuse, Burrell had the burden to prove by a preponderance of the evidence that Kennedy was acting as a law enforcement agent when she spoke to him after his June 2017 arrest. *See id.* at 530 (citing a civil case, which applied a preponderance of the evidence standard to proving agency, for the proposition that a defendant has the burden to establish that a government employee is working for or on behalf of the police by interrogating a person in custody); *see cf.*, *Huff v. State*,

17

No. 02-10-00477-CR, 2011 WL 2754562, at *4 (Tex. App.—Fort Worth July 14, 2011, no pet.) (mem. op., not designated for publication) ("And the burden to prove that a probation officer is acting on behalf of the State for custodial purposes in relation to article 38.22 warnings is on the defendant.").

Courts look at the entire record to determine whether the path of a non-law enforcement government employee in the case converged with that of law enforcement. *Wilkerson*, 173 S.W.3d at 530. Courts examine the record for (1) "information about the relationship between the police and the potential police agent"; (2) evidence "concerning the interviewer's actions and perceptions"; and (3) evidence "of the defendant's perceptions of the encounter." *Id.*

## B.   No *Miranda* warnings were required in this context.

Having reviewed the entire record for information about the relationship between Kennedy and the police (or, for that matter, the district attorney's office), the trial court did not abuse its discretion by determining that law enforcement was not attempting to use her "as its anointed agent." *See id.* at 530 (listing information courts consider such as whether the police knew the interviewer was going to speak with the defendant and whether they provided the interviewer with the questions to ask). Kennedy testified before the jury that she did not confirm with Bice whether Burrell received a blue card at his December 2017 appointment and that she did not recall ever speaking with Bice. When the State took Kennedy on voir dire outside the presence of the jury, she stated that she did not work in any capacity with the Fort

Worth Police Department regarding Burrell's failure to register, that she did not share with the police or any law enforcement agency Burrell's statements about his reason for not registering in March 2017, and that she eventually shared the information with the prosecutor in this case only in response to his subpoena of Burrell's parole records.

Likewise, regarding Kennedy's actions and perceptions, nothing suggests that she believed she was acting as an agent of law enforcement. *See id.* There is no evidence of what her primary reason was for questioning Burrell. There is no evidence that she asked him questions "aimed at gaining information and evidence for a criminal prosecution" or that she helped "build a case" that led to the Burrell's being charged with failure to verify his registration. *See id.* There is no evidence that she interviewed him at the request of the police.

There is evidence that Burrell's failure to register in March 2017 was a violation of his parole conditions: in its notice of intent to introduce evidence of extraneous offenses, the State included the fact that (1) on June 20, 2017, the administrators of Burrell's parole found that he violated his parole by failing in his duty to register as a sex offender every ninety days and (2) Burrell admitted this charge to the board of pardon and paroles. A violation of parole conditions is a matter that a parole officer would investigate. *See* Tex. Gov't Code Ann. § 508.001. Thus, it is possible that Kennedy asked him about his failure to register to gather evidence of whether he violated a parole condition. However, there is no evidence that Kennedy investigated

his failure to register in order to gain information to prosecute Burrell for that offense or helped prosecutors build a case, even when she learned of his failure to verify his registration. And from Kennedy's testimony, it is not clear if she was speaking to him as part of an investigation of his alleged parole violations; neither side questioned her about why she spoke to Burrell, and she did not volunteer that information. In sum, nothing in the record supports a determination that Kennedy believed that she was acting as an agent of law enforcement when she spoke to Burrell about his failure to register. *See Wilkerson*, 173 S.W.3d at 530.

Finally, there is no evidence of Burrell's perception of his encounter with Kennedy. *Id.* at 530. Kennedy testified that she spoke to Burrell after his arrest for failure to register, and he thus was in custody when she spoke to him. The record discloses little about the content or purpose of their conversation. The prosecutor asked if she spoke to Burrell "personally about his failure to appear—failure to report for his registration on March 27th of 2017," and she responded that she did and that "[h]e said that he did not get a blue card." The prosecutor then reiterated, "So when you spoke to him about whether or not he registered, he told you that he didn't because he didn't get a blue card?" to which she replied, "Correct." From this testimony, it is not clear whether she questioned him about his registration or whether he volunteered the information. While certainly "[a] parolee is under heavy psychological pressure to answer inquiries made by his parole officer," *United States v. Deaton*, 468 F.2d 541, 544 (5th Cir. 1972), in this case there is no evidence about the

20

context or purpose of the conversation or evidence that, when Kennedy spoke to him, he believed she was "cloaked with the actual or apparent authority of the police." *See Wilkerson*, 173 S.W.3d at 530. There was no evidence from which a finding could be made that a reasonable person in Burrell's position would believe that Kennedy was an agent of law enforcement investigating the failure to register offense because the record contains no evidence of the context of the conversation or what prompted the statements at issue. *Id.* at 530–31.

In summary, the trial court did not abuse its discretion by permitting the State to offer Burrell's statement to Kennedy even though she did not Mirandize him. *Huff*, 2011 WL 2754562, at *5 ("In this case, Huff presented no evidence to the trial court that her probation officer and the police were 'investigating a criminal offense in tandem.' Thus, the trial court did not abuse its discretion by allowing the State to introduce into evidence Huff's signed statement to her probation officer that she had twice used methamphetamine in violation of the conditions of her community supervision.") (citations omitted).

We overrule Burrell's third point.

## CONCLUSION

We modify the trial court's judgment to reflect the statute for the offense as article 62.102 of the Texas Code of Criminal Procedure. Having overruled Burrell's three points, we affirm the judgment as modified.

/s/ Dabney Bassel
Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 28, 2019